UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Dawn M. Rafferty,

                         Plaintiff,

                                                         **Hon. Hugh B. Scott**
                                                              09CV1019

                      v.                                       **Decision & Order**

Roy P. Erhard, Jr. et al.,
                        Defendant.
_____

Before the Court are the following motions: the plaintiff's motion to exclude evidence of a bankruptcy filing (Docket Nos. 71 & 77), the plaintiff's motion to exclude surveillance evidence (Docket No. 83 & 86), the plaintiff's motion to exclude the defendants' experts (Docket Nos. 88, 90, & 91) and the defendants motion to limit the testimony of the plaintiff's medical witnesses (Docket Nos. 70 & 94).

**Background**

The plaintiff, Dawn M. Rafferty ("Rafferty"), commenced this action in New York State court alleging that she was injured as a result of an automobile accident on July 2, 2008 in the Town of Ellicott, New York. The plaintiff alleges that the accident was caused by defendant Roy P. Erhard, Jr. ("Erhard"), who was operating a truck owned by defendant Herman R. Ewell Inc. ("Ewell"). (Docket No. 1-4 at ¶¶ 4-7). The plaintiff claims that she was stopped, attempting to

1

make a left hand turn, when the vehicle she was driving was rear-ended by a tractor-trailer operated by Erhard. The state court action was removed to this court based upon diversity jurisdiction (the plaintiff is a New York resident; while both defendants are Pennsylvania residents). (Docket No. 1 at ¶¶ 3-5).

The defendant Erhard has admitted that he was negligent and that his negligence was the sole proximate cause of the accident. (Docket No. 54 at ¶2). It appears that this stipulation leaves only the issues of the nature, cause, extent of the plaintiff's injuries and the amount of damages to be determined by a jury. (Docket No. 73 at ¶ 5). A jury trial is set to commence on July 9, 2012.

Motion to Exclude Bankruptcy Filing

The plaintiff seeks to preclude introduction of evidence relating to the fact that she filed for relief under the United States Bankruptcy code. (Docket No. 73 at ¶ 2). The plaintiff argues that evidence relating to any bankruptcy is not relevant to any of the remaining issues in this case. (Docket No. 77 at ¶ 3). Thus, the plaintiff contends that such evidence should be excluded under Rule 401 of the Federal Rules of Evidence. (Docket No. 92 at page 2).

The defendant has not responded to the plaintiff's motion relating to the exclusion of evidence relating to the bankruptcy filing.

The motion to exclude reference of the plaintiff's bankruptcy filing is granted.

Motion to Exclude Surveillance Evidence

The plaintiff also seeks to preclude introduction of any surveillance video, or other evidence deriving from clandestine surveillance of the plaintiff. (Docket No. 84 at ¶ 3). During

discovery in this case, the defendants have produced two written reports and a compact disc containing a video generated as a result of surveillance of the plaintiff. (Docket No. 84 at ¶ 7). The discovery reflects that there was a total of 80 hours of surveillance conducted by two investigators. (Docket No. 84 at ¶ 9).  An August 30, 2011 report suggest that the plaintiff was observed "engaging in physical activity," "conducting yard work" and "walking dogs."  The August 30, 2011 report concludes that the plaintiff "bent at the waist numerous times, squatted to the ground, turned her neck in difference directions and moved in a free and unrestricted manner [and] did not appear to wear any braces or utilize any orthopedic devices." (Docket No. 84-1 at page 3).  On August 17, 2011, the plaintiff was observed using an electric push mower to cut the grass at her residence, as well as using a edge trimmer and a blower on the front lawn. (Docket No. 84-1 at pages 3, 8).  In a report dated October 28, 2011, the plaintiff was allegedly observed on September 23, 2011 picking up two recycling bins and a trash can from in front of her home and bring them to the rear of the home. (Docket No. 84-2 at page 3).  Photographs appear to reflect that the recycle bins and trash can were empty at that time. (Docket No. 84-2 at page 5). On several occasions, Rafferty was allegedly observed walking dogs and moving about without the assistance of medical devices or orthopedic braces. (Docket No. 84-1 pages 3-8; 84-2 pages 2-11).

     The plaintiff contends that the surveillance evidence is not relevant to the issues in this case (Docket No. 84 at ¶ 11) and should be excluded under Rule 401.  The plaintiff argues that the observed activity by the plaintiff is not in conflict with the admitted abilities of the plaintiff, and thus, are irrelevant. (Docket No. 85 at page 2).  The plaintiff asserts that the fact that her physicians certify her as disabled does not mean "she cannot perform physical tasks for a short period of time, or on her good days. Neither do they claim she cannot perform the activities

3

shown on the video or documented in the reports." (Docket No. 85 at page 3). The plaintiff relies upon Soron v. Liberty Life Assurance Company of Boson, 2005 WL 1173076 (N.D.N.Y. 2005). In Soron, the plaintiff sought to obtain disability benefits based upon a long-term disability policy. The defendants contested the plaintiff's claim to being permanently disabled, relying in part, on surveillance evidence suggesting that the plaintiff could perform certain activities. In ruling of the parties' respective motions for summary judgment, the Court held that the surveillance "cannot be relied on to contradict this reporting because it shows her performing isolated activities for brief periods of time with no revelation of the consequences." Soron, 2005 WL 1173076 at *11.

In the instant case, the issues include not whether the plaintiff meets the definition of "disabled" under an insurance policy, but the extent to which the plaintiff's injuries resulting from the underlying accident impact the plaintiff's ability to perform daily functions and her overall quality of life. The plaintiff claims that the injuries she has suffered as a result of the accident resulted in cervical and lumbar disc herniations and have left her "in constant daily pain" and "severe depression." (Docket No. 105 at page 2). The plaintiff had described her injuries as including: surgery consisting of a complete C-5-6 disectomy, insertion of a bone cage device and bone graft; cervicalgia; cervical radiculopathy; loss of range of motion in her cervical spine; myofascial pain; an injury to her left wrist resulting in carpel tunnel syndrome requiring surgery; an injury to her right wrist resulting in left cubital tunnel syndrome requiring surgery; an injury to her right wrist resulting in carpel tunnel syndrome requiring surgery in the future; bilateral median neuropathy; ulnar neuropathy; disc herniation at L5-S1; posterior disc bulges at L2-3 and L3-4; lumbar radiculopathy; loss of range of motion in her lumbar spine; general weakness throughout her body; right lateral rib pain; concussive headache syndrome; numbness

in her lower extremities; confusion and memory loss; sleep disturbances; chronic headaches; major depressive syndrome; post traumatic stress syndrome; vertigo; anxiety attacks; and severe back pain. (Docket No. 91 at pages 2-5).   In response to the instant motion, the plaintiff asserts that at her deposition she admitted to being able to perform the physical activity depicted on the surveillance tape (i.e. walking dogs, picking up empty recycling and trash bins, using yard equipment), but that "any attempt to do so carried with it excruciating pain." (Docket No. 104 at page 4).  Whether performing these daily tasks causes the plaintiff "excruciating pain" is an issue to be determined by the trier of fact in this case. The surveillance evidence is relevant and material to that issue. Bachir v. Transoceanic Cable Ship Co., 1998 WL 901735, 1 (S.D.N.Y.,1998)(In a personal injury case, surveillance of the plaintiff can be a very important aspect of the defendant's case, if the surveillance tends to discredit the plaintiff's description of the extent and effects of his injuries.).  The Court also finds that the probative value of this evidence outweighs any prejudice to the plaintiff.  The plaintiff has not established any unfairness in allowing the surveillance evidence other than the fact that it is contradicted by the plaintiff's medical evidence.  This is insufficient to conclude that the surveillance evidence is unduly prejudicial. See Costantino v. David M. Herzog, M.D., 203 F.3d 164, 174 (2nd Cir. 2000)(Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*. ... The unfairness contemplated involves some adverse effect beyond tending to prove a fact or issue that justifies admission.).

      The motion to exclude the surveillance evidence is denied. The admission of any such evidence, however, shall be determined upon the establishment of a proper foundation at trial.

Motion to Limit Plaintiff's Medical Witnesses

The plaintiff's initial pretrial statement listed the following medical witnesses: Dr. Alexander Selouski; Dr. John Callahan; Dr. N. Rehmatullah, Dr. Brian Joseph and Dr. Michael Ferrick. (Docket No. 79). It appears that Dr. Ferrick and Dr. Joseph were designated as experts for the defendants. In an amended pretrial statement, the plaintiff added Dr. Laszlo Mechtler and Dr. Cameron Huckell as additional treating physicians the plaintiff intended to call at trial. (Docket No. 105 at page 4). The defendant seeks to limit the testimony of the plaintiff's medical witnesses because the plaintiff did not identify her treating physicians as experts pursuant to Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure. (Docket Nos. 70 and 94).

It is well-settled that a treating physician can testify at trial without disclosure of an expert report pursuant to Rule 26(a)(2)(B). Brusso v. Imbeault, 699 F.Supp.2d 567, 578 -579 (W.D.N.Y.,2010)(Payson, M.J.)(A treating physician may offer an opinion as to the cause of a plaintiff's injuries without being required to submit a written report under Rule 26 of the Federal Rules of Civil Procedure if the physician acquired that opinion through treatment of the plaintiff and is not otherwise a "witness retained or specially employed to provide expert testimony."). See also Franz v. New England Disposal Technologies, 2011 WL 5443856 (W.D.N.Y. 2011)(Schroeder, M.J.)(a treating physician "can express an opinion regarding the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of the disability, if any, caused by the injury" so long as the opinion is based upon the medical provider's care and treatment of the patient.).

In the instant case, the defendants argue that testimony from the plaintiff's physicians should be precluded because the plaintiff did not designate them as "experts" under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The defendants assert

that the designation and disclosure under Rules 26(a)(2)(A) and (C) is distinguished from the disclosure required under Rule 26(a)(2)(B). (Docket No. 94 at page 3). Rule 26 was amended, by order dated April 28, 2010, to add Rule 26(a)(2)(C) requiring that limited disclosure be made with respect to witnesses who expect to present evidence under Rule 702, 703 or 705 of the Federal Rule of Evidence, but who do not have to file an expert report under Rule 26(a)(2)(B). The Advisory Committee notes stated that the addition was to address cases where physicians and other health professionals may provide testimony. The amended rule became effective on December 1, 2010 with respect to all proceedings commenced thereafter, and ***"insofar as just and practicable, all proceedings then pending."*** See Orders of the Supreme Court of the United States Adopting and Amending Rules dated April 28, 2010 (emphasis added).

As noted above, prior to this amendment, physicians were allowed to testify without any disclosure under Rule 26. Prior to the amendment, because treating physicians were not "considered" experts requiring a Rule 26 report, physicians were often allowed to testify even where the physician was not designated under Rule 26. See Brusso v. Imbeault, 699 F.Supp.2d 567 (W.D.N.Y. 2010)(A treating physician need not be disclosed as an expert unless the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specifically retained to develop opinion testimony.); Goeken v. Wal-Mart Stores, Inc., 2001 WL 1159751 (D.Kan. 2001)(testimony of physician allowed notwithstanding that the plaintiff has not designated any of the treating physicians as expert witnesses nor made the necessary Rule 26 disclosures regarding their opinions).

In the instant case, the plaintiff did not designate or make disclosure relating to the plaintiff's treating physicians who the plaintiff intends to call at trial. The defendants now seek to preclude the plaintiff's physicians from testifying because the defendants have not taken the

depositions of these individuals.[1] Notwithstanding, the record reflects that the defendants have long been aware of the identities of the plaintiff's various treating physicians. As it is typical in such cases to call treating physicians at trial, the defendants must have known that the plaintiff intended to call some of her treating physicians as witnesses in this matter. Although it is the plaintiff's burden to identify her witnesses, the defendants have not articulated that they made any attempt to determine which, if any, the plaintiff may call at trial. Even after the plaintiff first noticed an intent to call at least two of the physicians a month ago, the defendants did not take any step to seek an opportunity to obtain further discovery (by way of deposition or interrogatory) from these individuals, or request an adjournment of the trial to do so. In the instant motion, the defendants still do not request an opportunity to depose the physicians if their testimony is not precluded, but instead, request that as an alternative the Court should limit the testimony of the treating physicians to their care and treatment of the plaintiff and not include information from outside sources. (Docket No. 94 at ¶ 22). The defendants acknowledge that such testimony would allow a physician to testify to diagnosis, treatment, prognosis and causation "but only as to the information he acquired through his treatment of the plaintiff. (Docket No. 94-1 at page 5). This is consistent with the Court's understanding of the limitations of the scope of a treating physician under Brusso and Franz cited above.

In light of the above, the Court declines to strictly apply the 2010 amendments to Rule 26 in this case inasmuch as this case was pending at the time of the amendment. The Court denies the motion to preclude the plaintiff's treating physicians from offering testimony at trial, but

---

[1] The plaintiff's counsel stated that he called chambers and spoke with the Court's Law Clerk who allegedly advised that "expert disclosure" was not required for treating physicians. The date of the purported call is not known. As described by plaintiff's counsel, the discussion did not expressly address the designation of physicians or the amendments to Rule 26.

...
...

grants the defendants' alternative that the physicians testimony be limited to their care and treatment of the plaintiff.

Motion to Exclude Defendants' Expert

On or about October 10, 2012, the defendants designated Dr. Michael Ferrick as an expert in this case. (Docket No. 89-1). On November 15, 2011, the defendants designated Daniel Castellani as an expert. (Docket No. 89-2). On November 30, 2011, the defendants designated Peter D. Capotosto (Docket No. 89-3) and Dr. Brian S. Joseph as experts in this case. Dr. Joseph is expected to testify as to the extent any injuries suffered by the plaintiff affected her mental health. (Docket No. 89 at ¶ 10). The instant motion does not relate to Dr. Ferrick or Dr. Joseph.

The plaintiff seeks to preclude the testimony of Dr. Daniel Castellani and Peter Capotosto on the grounds that their expected testimony and related reports are unreliable. In the alternative, the plaintiff requests hearing pursuant to <u>Daubert v. Merrell Dow</u>, 509 U.S. 579 (1993) on this issue. Specifically, the plaintiff alleges that Dr. Castellani's methodology in reviewing the plaintiff's medical records only renders his report and expected testimony unreliable. (Docket No. 90 at ¶ 8). The plaintiff also argues that Dr. Casetllani's proposed testimony and report are not founded in sufficient facts and data concerning the plaintiff's injuries to support his conclusions, and are therefore not reliable. (Docket No. 90 at ¶ 9). Similarly, the plaintiff contends that Dr. Capotosto's report and expected testimony "likewise fail to satisfy the prerequisites for admission under Rule 702 and <u>Daubert</u> because "its conclusions are based, to the exclusion of stronger evidence, on the flawed findings of Dr. Castellani's report." (Docket No. 90 at ¶ 11).

As noted above, the plaintiff alleges that as a result of that accident, she has undergone various surgeries to her back and left wrist; that she continues to experience severe back pain , as well as other physical issues (cervicalgia; disc herniation at L5-S1; posterior disc bulges at L2-3 and L3-4; lumbar radiculopathy; loss of range of motion in her cervical and lumbar spine; general weakness throughout her body; right lateral rib pain; concussive headache syndrome; numbness in her lower extremities; confusion and memory loss; sleep disturbances; chronic headaches; major depressive syndrome; post traumatic stress syndrome; vertigo; anxiety attacks; and severe back pain). (Docket No. 91 at pages 2-5). The plaintiff claims to be disabled as a result of these injuries. (Docket No. 91 at page 5).

The plaintiff asserts that the defendants initially designated Dr. Michael Ferrick as an expert in this case, but that after examining the plaintiff, Dr. Ferrick concluded that the plaintiff did sustain a cervical, thoracic and lumbar spine injuries as a result of the July 2, 2012 accident; that the surgery on the plaintiff's cervical spine was related to the accident; and that the plaintiff has an overall moderate level of disability caused by the accident. (Docket No. 91 at page 4). The plaintiff asserts that because the defendants did not like that opinion, the defendants supplemented their disclosure to designate Dr. Castellani as an expert. Dr. Castellani did not examine the plaintiff, but instead issued a report based upon his review of the various medical records and tests relating to the plaintiffs injuries. Dr. Castellani's report states that various x-rays taken after the accident on July 2, 2008 and shortly thereafter, revealed that the intervertabral disc spaces were well preserved; a July 9, 2008 MRI of the plaintiff's cervical spine showed "no significant abnormalities;" a July 10, 2008 x-ray of the plaintiff's thoracic spine was read as normal; and a July 10, 2008 MRI of the plaintiff's lumbar spine revealed only minor degenerative changes. Dr. Castellani also reviewed a February 2009 MRI which revealed

"no disc bulging" and only a slight decrease in disc signal and height; various MRI taken on February 16, 2009 showing a slight bulge at C4-5, and a "minimal bulge at T10-11. Also available for review was a June 15, 2010 MRI showing a disc bulge at L2-3, L3-4 and L4-5, as well as a disc herniation at L5-S1. Dr. Castellani reviewed various other reports from the plaintiff's medical providers.  He concluded that the plaintiff sustained a cervical and lumbar strain as a result of the July 2, 2008 accident, but Dr. Castellani stated that he found no evidence that the plaintiff's cervical and lumbar disc herniations were related to the July 2, 2008 accident inasmuch as the ambulance and emergency room records specifically state that she had no back pain and that there was no clinical findings supporting a cervical or lumbar herniation at that time. (Docket No. 89-3 at pages 1-6).

Because Dr. Castellani did not examine the plaintiff, Rafferty contends that Dr. Castellani's report and expected testimony "have no relevance or probative value and will only serve to mislead the jury" under Rules 401 and 403 of the Federal Rules of Civil Procedure. However, the plaintiff's argument in this regard is based upon the plaintiff's analysis that Dr. Castellani's methodology was flawed (inasmuch as he did not examine the plaintiff) pursuant to Daubert.  (Docket No. 91 at page 10).  Daubert issues aside, Dr. Castellani's report and expected testimony relate to the extent and cause of the plaintiff's injuries, and thus, are relevant and probative to the issues in this case.  Thus, Dr. Castellani's report and expected testimony are not inadmissible pursuant to Rules 401 or 403.

The plaintiff argues that Dr. Castellani's entire report and expected testimony are inadmissible under Daubert because he did not examine the plaintiff himself, but instead, based his opinion solely upon the review of the medical records.  (Docket No. 91 at pages 11-14). As a general matter, Daubert established that the trial court has a gatekeeping duty under Rule 702 to

ensure that any and all expert testimony admitted under Fed.R.Evid. 702 is "both relevant and reliable." "[T]he Supreme Court clarified [in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) ] that, whether a witness's area of expertise was technical, scientific, or more generally 'experience-based,' " the district court was required to "fulfill the 'gatekeeping' function of 'mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Nimely v. City of New York, 414 F.3d 381, 396 (2d Cir.2005), quoting Kumho Tire, 526 U.S. at 152.  Performance of the gatekeeping function requires the trial court to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 589. Factors that trial courts may consider in evaluating the reliability of expert testimony include: "whether a theory or technique has been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." Nimely, 414 F.3d at 396, quoting Daubert, 509 U.S. at 593-94. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Indeed, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir.2002).

However, the fact that a physician has not examined the plaintiff does not necessitate a finding that any such expert report or testimony offered by the physician is inadmissible under

Daubert. For example, in Giladi v. Strauch, 2007 WL 415365 (S.D.N.Y. 2007), the Court denied a Daubert challenge where the physician's report and testimony were based upon a "review of twenty-five records and data sources and his extensive experience as an orthopaedic and hand surgeon." See also Carroll v. Morgan, 17 F.3d 787 (5th Cir. 1994)(Dr. Bennett was qualified under Daubert to give an expert opinion on the standard of medical care owed to Carroll. His testimony was based on thirty years of experience as a practicing, board-certified cardiologist, on his review, among other things, of Carroll's medical records and the coroner's records, and on a broad spectrum of published materials.). Here, the record reflects that Dr. Castellani has been licensed to practice medicine since 1982, that he is board certified in neurology and psychiatry, and has been a clinical instructor at the SUNY Buffalo School of Medicine and an adjunct assistant professor of medicine at the New York College of Osteopathic Medicine. (Docket No. 65-1). Further, the record reflects that Dr. Castellani's opinion is based upon his review of over 30 test results and clinical reports relating to the plaintiff's various medical claims. (Docket No. 89-2).

The cases cited by the plaintiff in support of the contention that Dr. Castellani's failure to examine Rafferty render his opinion inadmissible under Daubert are inapposite. The plaintiff relies significantly on Prohaska v. Sofamor, S.N.C., 138 F.Supp.2d 422 (W.D.N.Y. 2001) in which Judge Curtin found that a physician who lacked both practical and formal training, experience, and knowledge in the area of spinal fusion surgery as well as in the area of spinal fixation devices was not qualified as an expert in that case. Prohaska, 138 F.Supp.2d at 437. In that case the Court noted:

> Dr. Austin admitted he never examined Mrs. Prohaska or communicated with her in any way. ... He did not read her deposition testimony or speak with any of her physicians. ... He

> had not reviewed any of her x-rays, original MRIs, or CAT scans (only reports), and was in no position to disagree with the conclusion offered by the radiologist since he had not seen the original images. ... The only medical records Dr. Austin reviewed were supplied by plaintiff's counsel; and he did not ask for any additional records, nor did he know if he had seen all of the medical records relating to her low back pain. ... The record reveals he did not examine the explanted C-D device, which he regarded as defective and the cause of Mrs. Prohaska's injuries, even though Mrs. Prohaska still had it in her possession.

Prohaska, 138 F.Supp.2d at 438. The Court concluded however that "[p]erhaps under the circumstances of this case a physical examination was not necessary, but Dr. Austin's other failures are substantial and render his report worthless." Prohaska, 138 F.Supp.2d at 438. Thus, this case does not support the proposition that Dr. Castellani's opinion is inadmissible under Daubert solely because he did not examine the plaintiff. The instant case is further distinguished from Prohaska, in that here Dr. Castellani's report reflects that he reviewed the actual x-ray films and MRI studies, and did not rely solely upon the reports. (Docket No. 89-2 pages 2-4). Similarly, in Minisan v. v. Danek Medical, Inc., 79 F.Supp.2d 970 (N.D.Ind.1999), the Court noted that the physician had not examined the plaintiff; however, the Court found that the physician's report was inadmissible under Daubert because an expert "must explain precisely how [he] went about reaching [his] conclusions and point to some objective source ... to show that [he] has followed the scientific method" but that in Minisan the physician had "failed to provide any explanation as to how he reached his conclusions." In the instant case, Dr. Castellani's report states an explanation as to how he concluded that the plaintiff's spinal herniations were not related to the July 2, 2008 accident (i.e. that the clinical evidence recorded on the day of the accident did not suggest such injuries). Although the plaintiff argues that as a neurologist, Dr. Castellani is not qualified to render expert testimony to contradict the orthopedic

14

experts the plaintiff intends to call. The plaintiff cites cases suggesting that neurologists who do not perform surgical procedures relating to various orthopedic devices are not qualified to testify in matters relating to those procedures or devices. These cases are inapposite, inasmuch as those issues are not present in this case. In the instant matter, the plaintiff complains of pain relating to various injuries she allegedly sustained in an accident on July 2, 2008. As a board certified neurologist, Dr. Castellani is qualified to testify as to the spinal injuries and pain related to the plaintiff's claims.

The plaintiff also contends that Dr. Castellani offers opinions and conclusions outside of his expertise. Specifically, the plaintiff contends that Dr. Castellani's conclusion No. 9 attempts to offer a "sociological or psychiatric opinion." (Docket No. 91 at page 18). In this finding, Dr. Castellani states:

> Ms. Rafferty's cervical thoracic and lumbosacral strains are self-limited, soft-tissue injuries from which an individual could be expected to make a full recovery. It has been my experience when individuals have prolonged subjective complaints, other factors have to be taken into consideration. These include but are not limited to poor job satisfaction, stress, anxiety, or depression. At times, the reinforcement of an individual's sick role by a treating physician is a factor. In Ms. Rafferty's case, it appears that her spinal condition deteriorated for reasons unrelated to the July 2, 2008 motor vehicle accident. It appears that several of the other factors may be relevant as well.

(Docket No. 89-2 at page 8). Although the record reflects that Dr. Castellani is board certified in psychiatry, Dr. Castellani does not cite to any basis upon which he could have made such an evaluation regarding plaintiff's psychological motivation absent an examination.

The defendants proposed to call Capotosto, a vocational rehabilitation expert, to testify that the plaintiff could return to work The plaintiff argues that Capotosto's report and expected

testimony is also inadmissible under <u>Daubert</u> because it is based upon Dr. Castellani's report which the plaintiff argued must be precluded.[2] (Docket No. 91 at page 19). Inasmuch as the Court finds that Dr. Castellani's testimony and report are not precluded, the motion to preclude the testimony and report of Capotosto is denied.

Finally, the plaintiff argues that the expert reports of Dr. Castellani and Capotosto must be excluded because they fail to comply with Rule 26 requirements including:

> a) a statement as to the complete facts and data considered and utilized in preparing the report and expected testimony;
>
> b) a listing of any exhibit that will be utilized;
>
> c) a list of the cases in which the expert has testified either at trial or by deposition within the last four (4) years;
>
> d) a statement of the compensation that will be paid for the report and testimony.

(Docket No. 91 at page 20).

The defendants have agreed, and the Court has directed, that the defendants cure these deficiencies immediately.

In light of the above, the plaintiff's motion to preclude the testimony and report of Dr. Castellani is denied, with the exception that Dr. Castellani not be permitted to testify as to the plaintiff's motivation or other psychological issues. Dr. Castellani's report, if introduced into evidence, shall be redacted accordingly.  the motion to preclude the defendant's expert witnesses

---

[2]   The Court notes that Capotosto's report also refers to the reports of several of the plaintiff's treating physicians, not solely Dr. Castellani.  (Docket No. 89-4 at page 2).

is otherwise denied.

    So Ordered.

                                              /s/ Hugh B. Scott
                                            United States Magistrate Judge
                                            Western District of New York

Buffalo, New York
July 3, 2012